IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALEXIS GARCIA | ) | |
| | ) | |
| vs. | ) | CA 06-98L |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

## I. INTRODUCTION

The Petitioner, Alexis Garcia ("Garcia"), filed the instant motion pursuant to 28 U.S.C. § 2255. Garcia claims he was deprived of his Sixth Amendment right to effective assistance of counsel because his counsel: (a) failed to appeal the denial of defendant's motion to suppress, (b) allowed the defendant to respond to a question from the Court at sentencing concerning the amount of drugs involved, and (c) did not raise an entrapment defense. For reasons discussed below, the Government contends that Garcia is wrong in each and every one of his assertions.

## II. TRAVEL AND FACTS

In November 2002, a confidential informant told the Providence Police that petitioner Garcia was conducting a heroin operation out of an apartment at 41 Ontario Street in Providence, and that Garcia was scheduled to make a heroin delivery at 6:00 p.m. on November 12, 2002. As Garcia drove away from the apartment at the appointed hour, the police stopped his car and seized from his pants pocket five bags of heroin weighing about 16 grams. A search of the apartment yielded: a bag of heroin weighing about 10.3 grams; a digital scale; baggies; a coffee grinder and mixing bowl with heroin residue on them and with Garcia's fingerprints on the bowl;

a gun; mail addressed to Garcia at the address, including a cable bill; photographs of Garcia; and Garcia's birth certificate and other documents relating to him. (Presentence Report (" PSR") at 12, 17 & 18; 9/8/03 Guilty Plea Transcript at 27-29.)

On April 29, 2003, a federal grand jury returned a three-count indictment charging that Garcia: (1) possessed with intent to distribute an unspecified quantity of heroin, in violation of 21 U.S.C.§§ 841(a)(1) and (b)(1)(C); (2) possessed the handgun as a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and (3) possessed the handgun in furtherance of a drug crime, in violation of 18 U.S.C. § 924(c)(1). On June 5, 2003, the government filed sentencing enhancement informations pursuant to 18 U.S.C. § 924(e)(1) and 21 U.S.C. § 851.

On June 4, 2003, defense counsel filed a motion to suppress the physical evidence, arguing that the police officers did not have reasonable suspicion or probable cause to search the defendant or his apartment. The Court conducted a suppression hearing on August 6 and 7, 2003, and rendered an oral opinion from the bench on August 8, 2003. In that opinion, the Court ruled that "the police officers had reasonable suspicion [to conduct a pat-down search] based upon those articulable facts, all of the information provided by the informants which was further corroborate by investigation, surveillance of the officers involved." (Aug. 8, 2003 Tr. at 24-25). With respect to the search of the apartment where additional narcotics were found, the Court upheld the search, finding that defendant's girlfriend "freely and voluntarily consented to the search." (Aug. 8, 2003 Tr. at 29)

On September 8, 2003, Garcia pled guilty to the drug charge pursuant to a written plea agreement. (9/8/03 Guilty Plea Transcript at 5, 35.) In return, the government agreed (among other things) that it would move to dismiss the other two counts as well as the two sentencing

enhancement informations, and it ultimately did so. (Plea Agreement at 2(b) and 2( c); 9/8/03 Guilty Plea Transcript at 7-8; 2/27/04 Sentencing Transcript at 28- 29.)

In light of Garcia's four prior felony drug convictions and his prior conviction for assault with a dangerous weapon, the Probation Department determined that Garcia was a Career Offender under USSG § 4B1.1(a) (PSR at 24), and therefore that his offense level was automatically 32 pursuant to USSG § 4B1.1(b)(C). The Probation Department performed an alternative analysis applying the drug guidelines (determining that the base offense level was 18 based on the aggregate weight of the seized heroin and that a two- level gun enhancement was required, see PSR at 17-20), but this analysis was academic because it produced a lower total offense level. See USSG § 4B1.1(b). Garcia's 17 criminal history points placed him in Criminal History Category ("CHC") VI, and CHC VI was applicable in any event because Garcia was a Career Offender, see USSG § 4B1.1(b). (PSR at 35.)

At the outset of the February 27, 2004, sentencing hearing, the Court asked defense counsel whether he objected to the PSR. Counsel replied: "Judge, the calculations and career offender, as I've shown Mr. Garcia in the guidelines, is absolutely correct; and apart from the acceptance of responsibility instanter motion, I don't have any problem with those and we understand." (2/27/04 Sentencing Transcript at 2-3.) While noting that it was "iffy" whether Garcia had accepted responsibility, the Court gave him the two-level reduction, which lowered his total offense level to 30 and produced a guideline sentencing range of 168-210 months. (2/27/04 Sentencing Transcript at 3-4.) The Court made no express findings concerning the PSR's alternative drug-guideline calculations, apparently because it was unnecessary to do so under the circumstances. After hearing Garcia's allocution, the Court imposed a 180-month sentence. (2/27/04 Sentencing Transcript at 27.) The court then granted the government's motion to

dismiss Counts 2 and 3 as well as the two sentencing enhancement informations. (2/27/04 Sentencing Transcript at 28-29.)

Garcia pursued a direct appeal, represented by Stephen Maidman, Esq. On May 27, 2005, the First Circuit Court of Appeals affirmed Garcia's conviction. On October 3, 2005, his petition for writ of certiorari was denied. The instant petition for relief was filed on March 6, 2006.

## III. THE LAW

### A. Section 2255 Motions

The pertinent portion of Section 2255 provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

A motion for relief under 28 U.S.C. § 2255 is the process by which a prisoner can petition for federal habeas corpus. Thus, relief is only available in those circumstances in which a habeas petition would apply; there is no right granted to a defendant by § 2255 to retry cases in which he has been adjudged guilty. Hill v. U.S., 368 U.S. 424, 427 (1962).

The Supreme Court has established that "the scope of collateral attack has remained far more limited" than that for direct appeal. U.S. v. Addonizio, 442 U.S. 178, 184-85 (1979). Additionally, an error of law is insufficient to establish the need for relief under a collateral attack; such error must constitute "a fundamental defect which inherently results in a complete miscarriage of justice." Id.

Thus, to obtain collateral relief, the burden on the defendant is substantially higher than the burden for direct appeal. Issues not raised at trial or on appeal are barred from collateral

attack without a showing of cause for the failure and "actual prejudice." Knight v. U.S., 37 F.3d 769, 772-73 (1st Cir. 1994).

There is no entitlement to a hearing on § 2255 motions as a matter of right. David v. U.S., 134 F.3d 470, 477 (1st Cir. 1998). Furthermore, such a hearing is not necessary "when a § 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." Person v. U.S., 27 F. Supp. 2d 317 (D.R.I. 1998) (quoting McGill, 11 F.3d at 225); U.S. v. Carbone, 880 F.2d 1500, 1502 (1st Cir. 1989). According to Rule 4 of the Rules Governing Proceedings in the United States District Courts Under § 2255, "[i]f it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the District Court, the judge shall make an order for its summary dismissal and cause the movant to be notified." The burden is on the moving party to establish his right to a hearing by a preponderance of the evidence. Myatt v. U.S., 875 F.2d 8, 11 (1st Cir. 1989).

Additionally, the First Circuit has held that "no hearing is required where the district judge is thoroughly familiar with the case." Ouellette v. U.S., 862 F.2d 371, 377 (1st Cir. 1988); Panzardi-Alvarez v. U.S., 879 F.2d 975, 985 n.8 (1st Cir. 1989). A district judge may use his personal observation and recollection of the events at trial to supplement the record. Gregory v. U.S., 585 F.2d 548, 550 n.4 (1st Cir. 1978); U.S. v. DiCarlo, 575 F.2d 952, 954-55 (1st Cir. 1978).

When the court examines a motion under § 2255 without a hearing, the allegations in the motion "must be accepted as true, except to the extent they are contradicted by the record, inherently incredible, or conclusions rather than facts." U.S. v. Mosquera, 845 F.2d 1122, 1124 (1st Cir. 1988). Additionally, "in determining whether the petitioner has carried the devoir of

persuasion in this respect… the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets." U.S. v. McGill, 11 F.3d 223, 225 (1st Cir.1993).

## IV. ARGUMENT

Garcia argues that he was deprived of effective assistance of counsel on three separate grounds. For reasons discussed below, Garcia's claims should all fail.

To establish a valid claim for ineffective assistance of counsel, the petitioner must satisfy the two-pronged test established in Strickland v. Washington: (1) he must demonstrate that his attorney's conduct failed to meet an objective standard of reasonableness, and (2) that the attorney's mistakes were such that they created a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 687-88 (1984).

The court examines the facts with a presumption that counsel's actions in the proceedings were reasonable, thus imposing a heavy burden on the defendant to prove otherwise by a preponderance of the evidence. Lema v. U.S., 987 F.2d 48, 51 (1st Cir. 1993). Furthermore, the court will examine counsel's action within the bounds of "a wide range of reasonable professional assistance" and in the light of the totality of the circumstances "from counsel's perspective at the time… making every effort to eliminate the distorting effects of hindsight." Singleton v. U.S., 26 F.3d 233, 238 (1st Cir. 1994)(quoting Strickland, 466 U.S. at 689); Natanel, 938 F.2d at 309-310.

Effective assistance does not require exhausting every legal and procedural option available, regardless of the likelihood for success. On the contrary, there is no duty to pursue

"weak options when it appears, in light of informed professional judgment, that a defense is implausible or insubstantial." Tuitt v. Fair, 822 F.2d 166, 172 (1st Cir. 1987)(quoting Cepulonis v. Ponte, 699 F.2d 573, 575 (1st Cir.1983)(internal quotations omitted)). Decisions that are deemed tactical, "whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." U.S. v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983).

Ultimately, the First Circuit has held that "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective counsel under the circumstances." Natanel, 938 F.2d at 309-310 (citations omitted).

1. Failure to Appeal Denial of Motion to Suppress

Garcia first argues that his appellate counsel was ineffective for failing to appeal the Court's denial of his motion to suppress physical evidence. This argument fails because defendant waived his right to appeal the suppression decision when he changed his plea to guilty. Relying on Tollett v. Henderson, 411 U.S. 258 (1973), the Court of Appeals for the First Circuit has held that a defendant's unconditional plea of guilty insulates from review all antecedent suppression rulings of the district court. United States v. Cordero, 42 F.3d 697, 698-99 (1st Cir. 1994) ("We have assiduously followed the letter and spirit of Tollett, holding with monotonous regularity that an unconditional guilty plea effectuates a waiver of any and all independent non-jurisdictional lapses that may have marred the case's progress up to that point, thereby absolving any errors in the trial court's antecedent rulings (other than errors that implicate the court's jurisdiction."). As Garcia had waived his right to appeal the suppression ruling by pleading guilty, his appellate counsel cannot possibly be considered ineffective for failing to press this claim.

As an aside, it should be noted that even if the suppression issue had not been waived, appellate counsel's failure to raise the issue would not be considered ineffective. The Supreme Court has determined that to establish the deficient performance prong of an ineffective assistance of appellate counsel claim, a petitioner must show that "a particular nonfrivolous issue was clearly stronger than issues that counsel did present." Smith v. Robbins 528 U.S. 259, 288, (2000); accord **Neverson v. Bissonnette**, 242 F.Supp.2d 78, 93 (D. Mass. 2003)

In Garcia's direct appeal, his counsel focused on relatively new 6th Amendment issues concerning the validity of the sentencing guidelines, in light of Blakely v. Washington, 124 S.Ct. 2531 and United States v. Booker, 125 S. Ct. 738 (2005). Those issues were clearly of more substance than Court's denial of Garcia's suppression motion, particularly given the lengthy hearing that was conducted by the Court and its well-reasoned opinion that the searches in question were supported by consent and reasonable suspicion. Given the detailed information of drug trafficking that was provided to the police and the corroboration of much of that information by the police, there was simply no valid argument to be raised on appeal that the searches were unjustified.

In any event, when Garcia elected to plead guilty and receive the benefit of a reduction of his offense level for acceptance of responsibility, he forfeited his right to appeal the Court's denial of his suppression motion. It was certainly reasonable for appellate counsel to refrain from raising this waived, frivolous issue on appeal.

2. <u>Allowing Garcia to Answer Court's Questions Regarding Drug Quantities</u>

Garcia next argues that his counsel was ineffective in allowing him to respond to the Court's questions during sentencing concerning the amount of drugs that were involved in the offense. According to Garcia, he "supplied a critical element of which the government was required to prove" when his counsel permitted him to respond to the Court's inquiries during the sentencing hearing. Garcia is wrong because the statements he made at sentencing concerning the amount of drugs were irrelevant to his sentencing range and because it was reasonable for his counsel to allow him to respond to the Court's questions.

The statements Garcia made during the sentencing hearing concerning the amount of drugs was absolutely irrelevant to his sentence as a career offender. In the Prosecution Version (PSR ¶ 12), the United States proffered that heroin with a gross weight of 16 grams was found on defendant's person and a bag of heroin weighing approximately 10 grams was found on defendant's person. Defendant did not object to any facts in the PSR.

In light of Garcia's lengthy prior record of drug trafficking and violence, the Probation Department determined that Garcia was a Career Offender under USSG § 4B1.1(a) (PSR at 24), and therefore his offense level was automatically 32 pursuant to USSG § 4B1.1(b)(C). The Probation Department performed an alternative analysis applying the drug guidelines (determining that the base offense level was 18 based on the aggregate weight of the seized heroin and that a two-level gun enhancement was required, <u>see</u> PSR at 17-20), but this analysis was academic because it produced a lower total offense level. See USSG 4B1.1(b).

As defendant was correctly determined to be a Career Offender under the Guidelines, the precise amount of drugs that were found on him was irrelevant to his Guidelines calculation. Therefore, any comments he made at the sentencing hearing concerning the amount of drugs did not in any way affect his guideline range.

Garcia appears to be referring to some questions asked of him by the Court at sentencing concerning the amount of heroin that was found on his person. Garcia told the Court that he did not have 16 grams of heroin on his person when he was arrested, but that he only had 10 grams. (Feb. 27, 2004 Tr. at 21-22.) The Government responded by telling the Court that the 16 grams of heroin was a gross weight and that the State Laboratory had not established a net weight for this heroin. (Id. at 22) The Government, however, reminded the Court that the precise amount of drugs found on the defendant was irrelevant to his guideline calculation since the defendant was being sentenced as a career offender. (Id.)

Defendant's assertion notwithstanding, Garcia's statement that he had 10 grams of heroin on his person did not supply the Government with a "critical element" it was required to prove. The Government established in the unobjected to prosecution version in the Presentence Report (and through witness testimony during the suppression hearing) that defendant had significant quantities of heroin both on his person and in his apartment as well as an assortment of drug trafficking paraphernalia, including a digital scale, baggies and a mixing bowl containing heroin on which defendant's fingerprints were lifted. (PSR ¶ 12) The Government certainly had sufficient evidence to establish that defendant was guilty of possessing heroin with the intent to distribute it. And, by pleading guilty, defendant admitted that he did, in fact, possess heroin with the intent to distribute it to others.

Garcia's comments at sentencing concerning the precise weight of the heroin on his person were therefore irrelevant both to the sufficiency of the evidence and to defendant's Guidelines calculation. And it was certainly reasonable for Garcia's counsel to allow him to respond to questions from the Court. Before defendant began his allocution, the Court had already indicated that defendant's acceptance of responsibility was "iffy." (Feb. 27, 2004 Tr. at 3) Given the fact that the Court had already expressed concerns about whether Garcia had truly accepted responsibility for his behavior, counsel acted reasonably in permitting his client to express his acceptance to the Court. While counsel could have, in theory, instructed his client to refuse to respond to the Court's inquiries, it was certainly reasonable for counsel to conclude that it could ultimately do Garcia more harm than good if he were to refuse to answer questions posed by the very Court that was about to impose sentence.

3. Failure to Raise Entrapment Defense

Petitioner's final claim is that his counsel was ineffective in failing to raise an entrapment defense. According to petitioner, his arrest was a direct result of information provided by an informant and counsel was therefore ineffective when he failed to raise an entrapment defense. To the contrary, it was eminently reasonable for counsel to decline to raise an entrapment defense as Garcia had a clear predisposition to distribute narcotics, as seen in his criminal record and the items that were seized from Garcia and his apartment.

The entrapment defense is an affirmative defense which "requires proof of (1) improper government inducement to commit the crime, and (2) lack of predisposition by the defendant to engage in criminal conduct." United States v. Glaum, 356 F.3d 169, 177 (1st Cir. 2004), judgment vacated on other grounds by, 125 S. Ct. 1030 (2005). The first element focuses on the conduct of government agents or informants vis-a-vis the defendant: what the agents or

informants said or did in the presence of the defendant that could qualify as improper inducement. The second element involves an assessment of the mental state of the defendant, based on a consideration of his words or deeds. Glaum, 356 F.3d at 177.

Counsel rightly concluded that an entrapment defense would have been the essence of frivolity. First of all, there was no evidence that the informant was acting at the direction of law enforcement or that there was any improper government inducement. The informant in this case was a tipster whose information was corroborated by law enforcement. Second, Garcia, a career offender, could not possibly have established a lack of predisposition to deal drugs. Garcia's criminal history consisted of 4 prior drug distribution convictions, including a conviction in the United States District Court for the District of Maine for which the petitioner was sentenced to 15 years of imprisonment after it was found that he was responsible for bringing kilograms of cocaine into Maine. (PSR ¶ 32). In addition, Garcia had a conviction for a crime of violence, that is a 1996 conviction for assault with a dangerous weapon, for which he received a 10 year sentence with 6 months to serve. (PSR ¶ 33). The assertion of an entrapment defense with this criminal background would have been meritless.

In addition to petitioner's criminal history, counsel had to confront the facts of the instant case when considering whether to press an entrapment defense. And those facts certainly demonstrated a predisposition to deal drugs on the part of the petitioner. Not only was a substantial quantity of heroin found both on the petitioner and in his apartment, but so was an arsenal of drug trafficking paraphernalia. Found within petitioner's apartments was a digital scale, baggies, coffee grinder and a mixing bowl on which officers found a white powdery substance that tested positive for heroin. Petitioner's fingerprints were later lifted from that

bowl. (PSR ¶ 12) Given all of this evidence and petitioner's lengthy criminal background, it was eminently reasonable for counsel to forego a frivolous entrapment defense.

## V. CONCLUSION

The United States therefore requests that the petitioner's motion be denied and dismissed. No hearing is required.

Respectfully submitted,
ROBERT CLARK CORRENTE
United States Attorney

Lee Vilker

LEE VILKER
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of June, 2006, I served a copy of the within Government's Response to Defendant's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To Title 28, United States Code, Section 2255, by postage prepaid mail to:

Alexis Garcia
Reg. No. 02447-036
USP-Hazelton
P.O. Box 2000
Bruceton Mills, WV 26525

[signature]