IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| ALEXIS GARCIA, Movant, | ) | |
| v. | ) | Case No. 06-98L |
| UNITED STATES OF AMERICA, Respondent. | ) | |

MOVANT'S RESPONSE TO THE GOVERNMENT'S RESPONSE TO HIS MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255

Comes Now Movant, Alexis Garcia, pro se. And in response to the government's response to his 2255 motion. In support of this response, Movant states as follows:

SUPPORTING FACTS

According to the affidavit of Special Agent Kevin McNamara, of the Bureau of Alcohol, Tobacco & Firearms, a confidential source/informant told a detective with the Providence, Rhode Island Police Department that a man named "Alex" would be leaving his residence of 41 Ontario Street, Apt. 5, at a specified time operating a red Pontiac Grand Am, to deliever a large quantity of heroin. On the exact same day the informant gave the detective the above information, the detective conducted surveillance of 41 Ontario Street, where he saw a red Pontiac bearing license plates belonging to Alexis Garcia, parked outside. The same detective witnessed the Movant entering the vehicle as well as entering and exiting the 41 Ontario Street address. At around 6:30 p.m., this same day, November 12, 2002, Providence Police Officers watched the Movant get in the red Pontiac Grand Am that had been parked in front of 41 Ontario Street. These officers also saw a female named Iris Montanez come out of 41 Ontario Street with the Movant. Ms. Montanez got in a Dodge Caravan. The van appeared to be following the red Grand Am driven by the Movant. Based on the information provided by the confidential

informant, the officers stopped the car Movant was driving as he parked in front of his residence at 103 Laura Street. Ordered Movant out of the car, frisked him and found on his person a significant amount of heroin wrapped in five separate packages. Seized the keys from his vehicle and entered his residence without a warrant. Simultaneously, Iris Montanez was stopped, handcuffed, placed in another vehicle driven by police, and repeatedly asked for permission to search her apartment, she was transported back to 41 Ontario Street, were she was again asked for permission to search her apartment without a search warrant. After all attempts failed, Ms. Montanez was transported to the Providence Police Department and threatened that if she did not give authorization to search her living quarters/apartment, she would remain in jail for three days until she consented. Because she did not want to be in jail for any length of time, she gave in after succumbing to the pressure of the police, and acquiesced in the search of her apartment. This agreement was premised only if the officers agreed to allow her to witness the search. The officers agreed. However, it was only a ploy to gain access to the apartment without a warrant and to make lawful the acts which had already taken place. As, by the time Ms. Montanez arrived at her apartment, the police were already there inside with the K-9 dogs. Ms. Montanez expressed her fear of the animals and asked that they be removed so that she could witness the search. Her request was refused. And she was only allowed to enter after the search was fully and thoroughly conducted. Noteworthy is the fact that the keys used to gain access to the apartment was confiscated from around the neck of the Movant. And he witnessed the officers enter the apartment.

GROUND ONE

As a defense against this claim, the government asseverates that Movant has waived this claim by virtue of his guilty plea which was said to be unconditional. They cite Tollett v. Henderson, 411 U.S. 258 (1973), and the First

Circuit Court of Appeal's holding in United States v. Cordero, 42 F.3d 697, 698-99 (1st Cir. 1994), as support for their position.

While the position of the government/respondent is well taken, we believe that under the circumstances of this case, they have missed their mark. This is so because the government has failed to consider Federal Rules of Criminal Procedure 11(c)(6). Coupled with the facts that the court specifically told Movant that he could appeal, it appears that waiver of his right to appeal was not part and partial of the guilty plea agreement. Movant's attorney never mentioned anything about waiving an appeal right, and the court never questioned Movant's understanding of the issue. This, we think, militates against a finding of waiver in this case. One other important factor which weighs against a finding of waiver is that Movant understands very little english. He can speak it a little. But it is broken, with a very limited vocabulary. If the waiver was never discussed with him, then it certainly should follow that the right to appeal was not knowingly and intelligently waived. See United States v. Teeter, 257 F.3d 14, 24-25 (1st Cir. 2001). "Consequently, we hold that the district court must inquire specifically at the change-of-plea hearing into any waiver of appellate rights. Neglecting this duty will constitute error and may serve to invalidate the waiver". Id.

Notwithstanding the governnment's assertions, had counsel desired to appeal the motion to suppress, counsel could have and was required to asserted his desire to preserve that option pursuant to Federal Rules of Criminal Procedure 11(a)(2). He did not elect to do that though. This rendered his assistance below the standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Resulting in the loss of Movant's right to effective advocacy.

STANDING TO MAKE SUPPRESSION CHALLENGE

In order to proceed to the merit of the suppression challenge, Movant is

required to establish that he has standing to make such a challenge. Fourth Amendment rights are personal rights which, like other constitutional rights, may not be vicariously asserted. Rakas v. Illinois, 439 U.S. 128, 133-34 (1978). Standing does not automatically devolve upon every accused. United States, Salvucci, 448 U.S. 83, 90-91 (1980)). Before considering the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized. Id. Unless and until the "standing" threshold is crossed, the bona fides of the search and seizure are not put legitimately into issue. Id.

A reasonable expectation of privacy necessary to establish standing for a defendant to challenge a search and seizure is determined by several factors. United States v. Gomez, 770 F.2d 251, 254 (1st Cir. 1985). Those factors are:

> possession or ownership of the area searched or items seized; prior use of the area searched or property seized; legitimate presence in the area searched; ability to control or exclude others' use of the property; and a subjective expectation of privacy.
>
> Id. In short, courts must look to whether or not the individual thought of the place or article as a private one and treated it as such. Aguire, 839 F.2d at 857. Succeeding in this, [Movant] must then demonstrate not only that he exhibited a subjective expectation of privacy, but also that his expectation was justifiable under the attendant circumstances. Id. Whatever facts may shed light upon either prong of the two tier inquiry may be weighed in the balance. Id.

It has never been contested, which constitutes an acquiescence, that Movant has standing to challenge the search and seizure of Apartment 15, at 41 Ontario Street. Rightly so, because Movant possessed keys to the place, it was leased in his name, and the Providence Police allegedly witnessed him come and go freely from the address. The only issue of serious contention by the government/respondent is whether or not the consent to search was voluntarily given. We do not believe that it was.

INVOLUNTARINESS OF THE CONSENT

In this case, no-one alleged that Ms. Montanez was engaged in any illegal activity. No police officer or witness ever testified that Ms. Montanez was the Movant's girlfriend before the investigation, nor was it ever proven that she was the occupant of the apartment before her arrest. The apartment was not in her name. So what gave the Providence Police any reasonable suspicion to even stop her vehicle? Was it just that she was seen coming out of the apartment building with the suspected drug dealer? It was never established that the two were ever seen in apartment 15 together. Moreover, the target vehicle was a red Grand Am. The target suspect was a male. Ms. Montanez is a woman/female, and she was driving a Dodge Minivan. There was no evidence that she was aware that drugs were even being sold from apartment 15, if they indeed were. Much less, that she was involved in it. There was no probable cause to arrest her. See Hunter v. Bryant, 502 U.S. 224, 228 (1991)(quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

Nevertheless, Ms. Montanez was not only stopped, she was immediately placed under arrest/handcuffed, her vehicle seized, while she was placed in another car driven by a member of the Providence Police Department, taken back to 41 Ontario Street where she was asked to provide consent to search her apartment, as her van and purse had already been searched - nothing was found. When she refused to allow the search of her abode by her consent, she was swiftly punished by a full-blown arrest. The reason she was arrested and transported to the police station was strictly for coercive purposes, to put pressure on her to consent to a search that was already in progress. She consented only because of the threat of being jailed for upto three days if she continued to refuse to consent to the search.

In United States v. Chavez-Villarreal, 3 F.3d 124, 127 (5th Cir. 1993),

that court said "[e]ven though voluntarily given, consent does not remove the taint of an illegal detention if it is the product of that detention and not an independent act of free will." In United States v. Campbell, 920 F.2d 793, 797-98 (11th Cir. 1991), the Eleventh Circuit held consent to search invalid because it was given after an illegal arrest, and because there were no intervening circumstances between arrest and consent which cured the taint. In addition, consent to search after an invalid arrest is tainted even though Miranda warnings were given. United States v. Bradley, 922 F.2d 1290, 1296 (6th Cir. 1991).

Against this background, it is apparent that Ms. Montanez's consent was involuntary. And we believe that any evidence derived from the search should have been suppressed. All evidence must be suppressed as fruit of illegal arrest unless consent both voluntary and not product of illegal detention. Campbell, 920 F.2d at 797.

The Government posits that the sentencing claim pursuant to Blakely v. Washington, 124 S.Ct. 2531 (2004) and United States v. Booker, 125 S.Ct. 738 (2005), "were clearly of more substance than court's denial of Garcia's suppression motion". See page 9, of the Government's Response To Defendant's Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255.[1] Obviously, those issues forwarded by counsel didn't carry much, if any, weight. The First Circuit denied the claims, and the U.S. Supreme Court denied certiorari. So we know that those issues were frivolous within the meaning of the word. While the suppression issue explained supra was never presented to the First Circuit. Therefore, we cannot say of a certainty that this issue would have been rejected by the Court of Appeals. According to the cases cited herein, this claim clearly has merit, unlike the ones forwarded on appeal by counsel. We think, based on that comparison, that counsel was ineffective for failing to appeal the suppression issue to

1. The pages are unnumbered in that document.

the Court of Appeals. See Smith v. Robbins, 528 U.S. 259, 288 (2000); Strickland v. Washington, 466 U.S. at 687-88. Counsel's actions fell below an objective standard of reasonableness, and but for counsel's failure to raise the suppression issue on appeal, there is a reasonable probability that the outcome would have been different.

Movant believes that he is entitled to an evidentiary hearing to assertain why counsel did not assert his right pursuant to Fed. R. Crim. P. 11(a)(2), and why he failed to inform Movant of the presumptive waiver of appellate rights resulting from an unconditional plea.

## GROUND TWO

COUNSEL WAS INEFFECTIVE FOR ALLOWING HIS CLIENT TO ADMIT THE AMOUNT OF DRUGS FOUND IN HIS POSSESSION.

In this case, counsel allowed and even counselled Movant to tell the court how much drugs he had in his possession. We think counsel's actions as they relate to allowing his client to supply a critical element of the government's case, rendered him ineffective when considered from an objective standard of reasonableness. See generally Strickland v. Washington, 466 U.S. 668 (1984). Compare Sentencing Transcript at page 22. The drugs had never been weighed. And the government didn't know the net weight.

The government avers that notwithstanding Movant's assertions that Movant would have received the same sentence no matter what that quantity was determined to be, by virtue of him being charged as a career offender. We disagree.

We first start with the proposition that drug quantity is an element of the crime for sentencing purposes. See United States v. Thomas, 274 F.3d 655 (2d Cir. 2001)(en banc). This Movant should not have been forced/allowed to provide the government's necessary and critical proof of the charged offense.

When discussing Fifth Amendment rights and essential safeguards, the Supreme Court's Justice Frankfurter said in Culombe v. Connecticut, 367 U.S. 568, 581 (1961), that "[c]ardinal among them, also, is the conviction, basic to our legal order, that men are not to be exploited for the information necessary to condemn them before the law, that in Hawkin's words, a prisoner is not 'to be made the deluded instrument of his own conviction.' 2 Hawkins, Pleas of the Crown (8th ed. 1824), 595. *** Its essence is the requirement that the [Government] which proposes to convict and punish an individual produce the evidence against him by the independent labor of its officers, not by the simple [...] expedient of forcing it from his own lips." See Blackburn v. Alabama, 361 U.S. 199, 206-07 (1960); Chambers v. Florida, 309 U.S. 227, 235-38 (1940).

In Griffin v. California, 380 U.S. 609, 615 (1965), the Court said the defendant's silence should not be held against him during the trial of the case. That Court suggested that the rule announced in Griffin would be the rule in its decision in Estelle v. Smith, 451 U.S. 454 (1981), when it discussed whether violation of the Fifth Amendment Miranda protections required exclusion of evidence during the sentencing stage of a trial. The Court said:

> "The Court has held that the availability of the [Fifth Amendment] privilege does not turn upon the type of proceeding in which its protection is invoked, but upon the nature of the statement or admission and the exposure which it invites. In this case, the ultimate penalty of death was a potential consequence of what what respondent told the examining psychiatrist. Just as the Fifth Amendment prevents a criminal defendant from being made "the deluded instrument of his own conviction," it protects him as well from being made the "deluded instrument of his own [sentence]."

The Court went on to say that it could not distinguish between the guilt and penalty phases of the trial in that case, so far as the Fifth Amendment privilege was concerned. It did not relieve the government of its "obligation to observe

fundamental constitutional guarantees." Id. at 462-63.

Eighteen years later, the Supreme Court directly held that Griffin's reasoning applies to sentencing, as well as liability, phase of a criminal proceeding. See Mitchell v. United States, 526 U.S. 314 (1999). The Mitchell Court looked at whether or not it was permissible for a district court to draw a negative inference from a defendant's refusal to testify during sentencing hearing after a guilty plea had been made. Id. at 327-30. The Court refused "to adopt an exception [from the Griffin rule] for the sentencing phase of a criminal case with regard to factual determinations respecting the circumatances and details of the crime." Id. at 328. The Court stated:

> The concerns which mandate the rule against negative inferences at a criminal trial apply with equal force at sentencing. Without question, the stakes are high: Here, the importance drawn by the District Court from Petitioner's silence may have resulted in decades of added imprisonment. The Government often has a motive to demand a severe sentence, so the central purpose of the privilege - to protect a defendant from being the unwilling instrument of his or her own condemnation - remains of vital importance.

Id. at 329. See Tucker v. Francis, 723 F.2d 1504, 1509-13 (11th Cir. 1984) (noting in dicta that Griffin applies to sentencing phase).

This line of reasoning reveals the hollowness of the government's/respondent's postulation that "[w]hile counsel could have, in theory, instructed his client to refuse to respond to the court's inquiries, it was certainly reasonable for counsel to conclude that it could ultimately do Garcia more harm than good if he were to refuse to answer questions posed by the very court that was about to impose sentence." See page 11 of the Government's unnumbered Response to Movant's 2255 Motion. Of interest, and rightly so, the government never offers any legal authority or support for the bald assertion and obvious inference that the court could punish the defendant/Movant for asserting his Fifth

Amendment privilege.

Now, as it relates to the can of worms opened by the government concerning Movant's status as a career offender, counsel's deficiency is more fully evidenced because of the defense which should have been raised to that charge. Counsel is charged with knowing that the application of the career offender statute is clearly inappropriate in this case. And we believe that classifying Movant as a career offender, in this case, "significantly over-represents the seriousness of [his] criminal history." U.S.S.G. §4A1.3. See also United States v. McFarland, 1992 U.S. Dist. LEXIS 19038, *3, 1992 WL 395589 (S.D.N.Y.), aff'd, 996 F.2d 302 (2d Cir. 1993). Counsel indeed should have sought to nullify the use of the career criminal enhancement. In United States v. Rivers, 50 F.3d 1126, 1131 (2d Cir. 1995), the Second Circuit held:

> We agree with the other circuits that section 4A1.3 manifests the Commissions view that a sentencing judge should exercise discretion whenever the judge concludes that the consequences of the mathematical prior-history calculation, prescribed by sections 4A1.1 and 4A1.2, either under-represent or over-represent the seriousness of a defendant's prior record. We also agree that in the case of a defendant whose offense level is raised by his criminal history into career offender status, such discretion may be exercised, to the extent thought appropriate, to reduce either the criminal history category or the offense level, or both.

While it is readily conceded that Movant had four convictions for drug offenses, only one qualifies as a serious drug offense. And the assault with a dangerous weapon was the result of a fist fight, stemming from a disagreement in a nightclub, with no connection to drug activity. We think this justified a departure from the career offender status. In addition, the drugs found in this case were said not to be for sale, but rather, for use by Movant and his friends. The amount seized was small in comparison to one categorized as a

major drug dealer. The confidential informant indicated that there would be a large quantity involved. Ten or twenty grams is not considered a large quantity by any stretch of the imagination. Moreover, there is nothing in the sentencing proceeding indicating that the court ever considered the assault in its career offender determination. See page 24-25 of the Sentencing Transcript.

Of significance, the Supreme Court in the case of Koon v. United States, 518 U.S. 81, 113 (1996), where the Court emphasized the importance of the district court's departure power to the fair administration of the guideline system, stating:

> The goal of the Sentencing Guidelines is, of course, to reduce unjustified departures and so reach towards the evenhandedness and nuetrality that are the distinguishing marks of any principled system of justice. In this respect, the Guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system. This, to, must be remembered, however. It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. We do not understand it to have been the congressional purpose to withdraw all sentencing discretion from the United States district judge.

Against this background, we believe the career offender application was unwarranted. And even if this court were to find that this assertion is patently without merit, we suggest that application of the career offender status to Movant has absolutely nothing to do with whether counsel was ineffective for allowing Movant to supply the element necessary to his guilty and sentence. The government had the burden of proof. And we live in an accusatorial, not an inquisitorial society. Rogers v. Richmond, 365 U.S. 534, 541 (1961). We believe counsel's actions were fatal to Movant's defense. As the failure of the court to use the crime of violence in its assessment of the career offender

status rendered the application of that status inapplicable or inappropriate under the circumstances of this case. Yet, because of failure of counsel to make a challenge or raise an objection on these basis', Movant was sentenced as a career offender. Coupled with the fact that Movant was allowed by counsel to supply the element of the offense charged shows the prejudice. As he suffers from the loss of his right to an effective advocate. And was left to his own devices against the prosecutorial forces of organized society. He was sentenced very stiffly because of his candor in helping the government to prove its case, rendering him a deluded instrument of his own conviction. We think he should be allowed to withdraw his plea and proceed to trial. Or, in the alternative, have his sentence vacated.

## GROUND THREE

### COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE ISSUE OF ENTRAPMENT WERE THE INFORMANT SET MOVANT UP FOR THE POLICE

To establish entrapment, it must be shown that (1) the government induced the offense and (2) the defendant was not predisposed to commit it. United States v. Acosta, 67 F.3d 334, 337 (1st Cir. 1995)(citing Jacobson v. United States, 503 U.S. 540 (1992)). Entrapment is a question for the jury to decide. Acosta, 67 F.3d at 338. See also United States v. Pratt, 913 F.2d 982, 988 (1st Cir. 1990)("The question of whether entrapment occurred is factual in nature, and requires submission to the jury if there is some evidence of it.")(internal citation omitted).

It has also been held that the government's active participation in a criminal venture may be so shocking as to violate a defendant's right to due process, notwithstanding the defendant's predisposition to commit the crime. Hampton v. Untied States, 425 U.S. 484, 491-95 (1976)(Powell, J., concurring); United States v. Russell, 411 U.S. 423, 431-32 (1973); United States v. Santana,

6 F.3d 1, 4 (1st Cir. 1993).

In this case, Movant was a user of the drug in question. He was not in the habit of acquiring drugs in the traditional sence, to distibute them. However, on occasion, he would purchase drugs for group use. In this case, it was the alleged confidential informant who suggested that there be drugs purchased by the group, and that everyone meet at the Movant's residence for use of the drugs. He even nominated Movant as the man who would purchase the drugs and bring them back to Movant's residence. Movant only agreed just for the sake of comradery with his fellow drug users. He was totally oblivious that the C.I., one Mr. Henry Hernandez had been arrested by Providence Police and had agreed to give them a major drug bust. Movant certainly did not have a clue that he was the individual whom Mr. Hernandez had chosen to set-up. Movant never had the pre-conceived intention of purchasing drugs for anyone on the day in question. And it was done only at the behest of the government agent, Mr. Hernandez. Had it not been for the suggestion of Mr. Hernandez, Movant would not have had the amount of drugs seized from him.

We believe that these facts clearly establish entrapment. As the government agent did induce this offense. And Movant would not have done it had it not been for the suggestion and urgings of Mr. Hernandez, who had a vested interest in Movant acquiring the drugs. As he had already told the Police that Movant would have the drugs. That also reveals why he had such keen knowledge of the specifics of when the Movant would be leaving the apartment and what he would have in his possession. We think this should be considered outrageous government conduct, where the government agent manufactures a scenerio for the purpose of charging an individual with a crime.

Counsel's failure to raise the issue of entrapment was fatal to Movant's case. Consequently, counsel's action in failing to make a challenge on entrapment

grounds so as to preserve the argument for the jury to determine, rendered his inaction ineffective assistance of counsel. Movant believes that counsel's actions in not making the entrapment defense was unreasonable under the circumstances. And that but for counsel's failure to raise the defense, the outcome of the case would have been different. The prejudice is obvious. Movant stands convicted for a crime that was induced by the government, and could have, if properly challenged, rendered the charges null. Counsel was aware of the facts alleged here. Yet failed to act prudently upon them. Instead opting to counsel Movant to plead guilty and get it over with.

We believe that Movant's guilty plea should be withdrawn under the facts alleged here. Or, in the alternative, his sentence reduced or vacated.

Wherefore, for the foregoing reasons, Movant prays this court vacate his convictions, set asisde his sentence, discharge him, or resentence him. And hold an evidentiary in this case. Or any other relief this court deems proper.

Respectfully submitted,

Alexis Garcia

Alexis Garcia Pro-Se

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was mailed postage prepaid this 14 day of September, 2006, to:

Lee Vilker
Assistant United States Attorney
50 Kennedy Plaza, Eighth Floor
Providence, Rhode Island 02903

Alexis Garcia

Alexis Garcia

CERTIFICATE OF MAILING

I hereby certify that this document was placed in the hands of the Penitentiary authorities/mailroom personnel this day 14 of September 2006.